NO. 17-14073

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee*,

v.

**MICHAEL RAY ALFORD**,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
USDC NO. 5:16cr28-RH

---

# RESPONSE BRIEF OF THE UNITED STATES

CHRISTOPHER P. CANOVA
United States Attorney

JORDANE E. LEARN
Assistant United States Attorney
Appellate Division
111 N. Adams Street, 4th Floor
Tallahassee, Florida 32301
(850) 942-8430

## CERTIFICATE OF INTERESTED PERSONS

Counsel for Appellee, United States of America, certifies that, in addition to the persons listed in Appellant's Certificate of Interested Persons, the following persons and entities may have an interest in the outcome of this case:

Rhew-Miller, Karen E., First Assistant United States Attorney

*s/ Jordane E. Learn*
JORDANE E. LEARN
Assistant United States Attorney

## Statement Regarding Oral Argument

The government does not request oral argument.

**TABLE OF CONTENTS**

Certificate of Interested Persons....................C1

Statement Regarding Oral Argument....................i

Table of Contents....................ii

Table of Citations....................iv

Statement of Jurisdiction....................x

Statement of the Issues....................1

Statement of the Case....................2

I. Course of Proceedings and Disposition in the Case Below....................2

II. Statement of Facts....................3

*A. Defendant's Call to K-Mart and the Subsequent Investigation*....................3

*B. The Google Warrant*....................7

*C. The Trial Evidence*....................11

*D. Sentencing*....................18

III. Standards of Review....................19

Summary of the Arguments....................20

Argument....................23

I. The District Court Did Not Err in Denying Defendant's Motion to Suppress because the Google Search Warrant Was Not Overbroad....................23

II. The District Court Did Not Abuse Its Discretion by Admitting Evidence of Child Erotica....................33

III. The District Court Properly Denied Defendant's Motion for Acquittal Because the Government's Evidence Proved Defendant Knowingly Possessed Child Pornography....................39

Conclusion ........................................................................................ 48

Certificate of Compliance.............................................................................. 49

Certificate of Service ........................................................................................ 50

## TABLE OF CITATIONS

### Cases

*Andresen v. Maryland*, 427 U.S. 463 (1976) .................................................. 32

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) ........................................... 23

*Dalia v. United States*, 441 U.S. 238 (1979)................................................... 28

*Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) ......................................... 29

*Holifield v. Davis*, 662 F.2d 710 (11th Cir. 1981)........................................... 46

*United States v. Baker*, 432 F.3d 1189 (11th Cir. 2005) .................................. 35

*United States v. Blake*, 868 F.3d 960 (11th Cir. 2017)......................23, 25, 30, 31

*United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011)............................23, 24

*United States v. Dobbs*, 629 F.3d 1199 (10th Cir. 2011) .................................. 44

*United States v. Edouard*, 485 F.3d 1324 (11th Cir. 2007)................34, 35, 36, 37

*United States v. Folk*, 754 F.3d 905 (11th Cir. 2014) ...................................... 27

*United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992) ............................ 19

*United States v. Foster*, 889 F.2d 1049 (11th Cir. 1989) .................................. 35

*United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999) ................................. 38

*United States v. Jackson*, 120 F.3d 1226 (11th Cir. 1997)................................ 27

*United States v. Johnson*, 777 F.3d 1270 (11th Cir. 2015) ............................... 19

*United States v. Kapordelis*, 569 F.3d 1291 (11th Cir. 2009)........................37, 38

*United States v. Leon*, 468 U.S. 897 (1984).................................................... 30

*United States v. McLean*, 138 F.3d 1398 (11th Cir. 1998) ................................ 35

*United States v. Pruitt*, 638 F.3d 763 (11th Cir. 2011) .............................. passim

*United States v. Ramirez*, 426 F.3d 1344 (11th Cir. 2005)................................ 37

*United States v. Rodriguez*, 732 F.3d 1299 (11th Cir. 2013).............................. 39

*United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010).............................. 45

*United States v. Slocum*, 708 F.2d 587 (11th Cir. 1983) .................................. 32

*United States v. Sokolow*, 490 U.S. 1 (1989)................................................... 28

*United States v. Spivey*, 861 F.3d 1207 (11th Cir. 2017) .................................. 29

*United States v. Spoerke*, 568 F.3d 1236 (11th Cir. 2009)................................. 44

*United States v. Stantarelli*, 778 F.2d 609 (11th Cir. 1985) ..........................26, 28

*United States v. Taylor*, 417 F.3d 1176 (11th Cir. 2005) .................................. 36

*United States v. Travers*, 233 F.3d 1327 (11th Cir. 2000) ...........................23, 31

*United States v. Wuagneux*, 683 F.2d 1343 (11th Cir. 1982) ..................... passim

*Vernonia School Dist. 47J v. Acton*, 515 U.S. 646 (1995) .................................. 28

**Statutes**

18 U.S.C. § 3231 ........................................................................................ v

18 U.S.C. § 3742 ........................................................................................ v

18 U.S.C. §§ 2252A(a)(2) & (b)(1)......................................................... 2, 40

18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2) .......................................................... 2

28 U.S.C. § 1291 ........................................................................................ v

## Rules

Fed. R. Evid. 401 .......... 34

Fed. R. Evid. 402 .......... 34

Fed. R. Evid. 403 .......... 35

Fed. R. Evid. 404(b) .......... 34

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. The Appellant filed a timely notice of appeal from the judgment entered on September 5, 2017. Docs. 92 & 95. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

I. Did the District Court Err in Denying Defendant's Motion to Suppress Evidence Obtained Pursuant to the Search Warrant Issued for his Google Account?

II. Did the District Court Abuse its Discretion in Admitting Evidence of Child Erotica Found on the Residential Computers?

III. Did the Government Present Sufficient Evidence that Defendant Knowingly Possessed the Child Pornography Found in his Email and on the Desktop Computer?

## STATEMENT OF THE CASE

### I. Course of Proceedings and Disposition in the Case Below

By a two-count indictment filed on November 1, 2016, Michael Ray Alford ("Defendant") was charged with receipt and attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) & (b)(1) (Count One) and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2) (Count Two). Doc. 1. On March 26, 2017, Defendant filed a motion seeking to suppress the evidence of child pornography. Docs. 28 & 44. After hearing the motion, the district court denied it. Doc. 49. Defendant then filed a motion in limine, seeking to exclude evidence of his prior conviction of a child-pornography offense and evidence of his possession of child erotica. Doc. 51. The district court also denied that motion. Doc. 55.

After a two-day jury trial, Defendant was convicted of both counts. Doc. 68. Count Two was dismissed at sentencing upon the government's motion. Doc. 136 at 26-27. The district court sentenced Defendant to 180 months' imprisonment on Count One, followed by a lifetime of supervised release. Doc. 92. Defendant filed a timely notice of appeal, Doc. 95, and now appeals his conviction as well as the denials of his motion to suppress and his motion in limine.

## II. Statement of Facts

### *A. Defendant's Call to K-Mart and the Subsequent Investigation*

On the evening of September 16, 2014, Michelle Haley ("Haley") was working her shift at a K-Mart in Hamilton, Montana, when the store received a call from an unknown man requesting a price-check on K-Y Jelly. Doc. 52 at 5; Doc. 134 at 30, 35-36. After Haley returned with the price of the item, the man queried whether it would work for him and his six-year-old daughter "because it was her first time and she was tight." Doc. 52 at 5; Doc. 134 at 30, 35-36. Haley told the caller he was sick and hung up the phone, but not before taking down the caller's phone number. Doc. 52 at 5-6; Doc. 134 at 30-31, 35-36. Believing that the unknown man was planning to sexually assault his young daughter, Haley and her store manager contacted the Hamilton Police Department. Doc. 52 at 5-6; Doc. 134 at 30-31, 35-36.

Officer Don Niemeir ("Officer Niemeir") took Haley's statement and determined that the caller's phone number was the generic caller identification number for calls made through Google Voice, "a service where users can place phone calls from their Google account[s]." Doc. 52 at 6-7; Doc. 134 at 34-36, 40. Hamilton Police Detective Stephen Brunner-Murphy ("Detective Brunner-Murphy") collected all incoming numbers for the K-Mart store and obtained a

search warrant for any records in Google's possession that may identify the unknown caller. Doc. 52 at 7; Doc. 134 at 36; Doc. 28-2

Google identified a single account that had called the Hamilton K-Mart the evening of September 16, 2014: "michellecuty013."Doc. 134 at 41-42, 48-49. In accordance with the search warrant, Google turned over michellecuty013's subscriber information, Google Voice records, search history, and full email content, as well as a list of IP addresses used to access the account. *Id.* at 42, 48; Doc. 52 at 14. The subscriber information indicated the michellecuty013 account was opened in December 2008 under the name "Michelle Belly Dance" and had a recovery email of "mikel@mikelsstudio.com." Doc. 134 at 49-50, 52. Google Voice records confirmed the michellecuty013 account had made the call to the K-Mart. *Id.* at 51-52.

Finding the subscriber information unhelpful, Detective Brunner-Murphy began reading through michellecuty013's 4,000 emails to try to identify the owner of the account. *Id.* at 53-56; Doc. 52 at 22. He observed that the owner went by either "Mikel" or "Michelle," had "some sort of furniture-type" business, and appeared to be "a male that's representing himself as a female or vice versa." Doc. 134 at 53-56. He also found a Youngstown, Florida address, but was still unable to discern the owner of the account. *Id.* Brunner-Murphy

decided to reorganize the emails, filtering them by size so those with large attachments would appear first. *Id.* at 56; Doc. 52 at 23. When he played a video attached to one of the emails, "it became very apparent after a few moments" that the video "was some sort of child pornography." Doc. 52 at 23; Doc. 134 at 56-58. The video depicted a young girl lying naked on a couch while an off-camera female encouraged the girl to touch herself sexually. Doc. 134 at 57-58. Recognizing that child pornography made the investigation federal, Detective Brunner-Murphy stopped his review of the emails and contacted the FBI. Doc. 52 at 19-20, 22; Doc. 134 at 58-59. At that point, he still had not identified the owner of the michellecuty013 account. Doc. 52 at 19, 22; Doc. 134 at 59.

The Google records eventually ended up in the hands of Deputy Matthew Williams of the Fort Walton Sheriff's Office and the North Florida Internet Crimes Against Children Task Force ("Deputy Williams"). Doc. 134 at 62-66. Deputy Williams reviewed emails from the michellecuty013 account and discovered eight emails with child pornography attachments. *Id.* at 68-74, 106. Looking at the IP address logs, Deputy Williams determined that the same residential IP address (98.192.136.47) was most commonly used to access the account, so he sent a subpoena to Comcast for the records associated with that IP address. *Id.* at 66-68. The information provided from Comcast listed "Mikel Alford" as the internet subscriber and Defendant's home address as the service

address. *Id.* at 68. After running the address through a law enforcement database, Deputy Williams determined that Defendant and his parents Melvin and Ethel Alford lived at the address. *Id.* at 74-76.

Based on the child pornography, Deputy Williams obtained a search warrant for the Alford residence, which law enforcement executed on December 9, 2014. *Id.* at 76-77, 82. Law enforcement seized two computers from the residence during the search, one laptop found in the living room and a desktop kept in a computer room, as well as a cellphone and notebook found in Defendant's bedroom. *Id.* at 84-87, 90-91; Doc. 135 at 175, 177.[1] The notebook contained email addresses and passwords, including the name and password of the michellecuty013 account. Doc. 134 at 87-88, 129-32. Deputy Williams interviewed Defendant during the search. *Id.* at 91-92. Defendant denied that he was behind the michellecuty013 account, that he had ever used Google Voice, and that he owned either computer, though he admitted to using the laptop for his business. *Id.* at 92, 98. Gov. Exs. 42(a)&(b).

Forensic analysis of the laptop computer named revealed internet searches for content related to young girls and teens involved in sexual conduct, as well as searches for child pornography and child erotica. Doc. 135 at 196-200. The

[1] Citations to the second day trial transcript refer to the original court reporter's pagination, not the ECF pagination.

analysis also revealed over 30,000 images of child erotica saved in over 170 sub-folders. *Id.* at 201-03. Forensic analysis of the desktop computer produced similar results: internet searches for "K-Y Jelly Cherries," child pornography, and child erotica, along with 20,000 images of child erotica. *Id.* at 209-10. But the investigators also recovered "over a hundred" thumbnail images of child pornography saved in the desktop computer's thumbcache and twenty-four images of child pornography that had been previously deleted and subsequently recovered using special software. *Id.* at 210-15, 250, 253-55. Both computers had been used to log into the michellecuty013 account, and the desktop had been used to log into the account in the early morning before the search. *Id.* at 192-95, 207.

*B. The Google Warrant*

Defendant moved to suppress the evidence of child pornography on the ground that the search warrant for Google's records (the "Google warrant") was overbroad.[2] Doc. 28. The warrant alleged that there was probable cause to believe that the unknown Google user who called in K-Mart had violated Montana Statutes § 45-8-213 for privacy in communications and § 45-5-503 for

---

[2] Defendant also argued that the evidence should be suppressed because the Google warrant was not supported by probable cause and the warrant for the residence was based on stale information. Docs. 28, 44. The district court rejected those arguments, Doc. 49, and, because Defendant is not appealing those rulings, the government does not discuss them further.

sexual intercourse without consent. Doc. 52 at 7; Doc. 28-2. It sought information to identify the caller and required Google to turn over

> [a]ny and all records, files, data, and/or other forms of information, including names, user names, dates of birth, IP addresses, home addresses, phone numbers, email addresses, photos, videos, e-mail content, search history, call history, or other information held by Google Inc. which may aid in obtaining the identification and/or location of the individual who[] contacted K-[M]art in Hamilton, MT via phone call to 406-363-2922, 406-363-2923, 406-363-4367 and/or 406-363-2924 on September 16th, 2014 at approximately 2145 hours MST.

Doc. 28-2. In response to the warrant, Google provided the subscriber information, Google Voice records, search history, the full email contents, and IP addresses associated with the michellecuty013 account. Doc. 52 at 14; Doc. 134 at 42, 48.

The government called Detective Brunner-Murphy to testify about the Google warrant at the suppression hearing. Detective Brunner-Murphy explained that he had authored "hundreds" of search warrants as the only police detective in Hamilton. Doc. 52 at 4. After reviewing Officer Niemeir's report about the September 16, 2014 call to K-Mart, Detective Brunner-Murphy determined that there was probable cause to believe the unknown caller had violated Montana law. *Id.* at 5-7. Officer Niemeir had determined that the call came from a Google Voice user, so Detective Brunner-Murphy drafted a search warrant for Google seeking information that could potentially identify the

unknown caller. *Id.* at 5-8; Doc. 134 at 36. Before submitting the warrant application, he had it reviewed by the city attorney, as required by Hamilton Police Department Policy. Doc. 52 at 5, 7-8. After the state court judge signed the warrant, Detective Brunner-Murphy served it upon Google, who turned over michellecuty013's records in response. *Id.* at 7-9.

Detective Brunner-Murphy admitted that the warrant served "more than one purpose." *Id.* at 9, 19. Because the content of the call gave him "reason to believe that [sexual battery] had occurred, was occurring, or was about to occur," he testified that they "first and foremost" wanted to investigate whether "[there was] a child that was being victimized, "so they could "do what [they] could to assist that child." *Id.* at 9-10, 19. But Detective Brunner-Murphy made it clear that the purpose of the warrant was also "to identify the suspect" who had made the obscene telephone call to K-Mart and to "figure out [geographically]" where the caller was. *Id.*; Doc. 134 at 36. He testified that the evidence requested from Google, including photos and email content, would help him to identify the suspect and that he did not further limit the information sought because he "was specifically looking for information … that would allow [him] to identify this individual" and he did not know "where the information is that [he] need[ed], where the fruits of this crime or the evidence [was]." Doc. 52 at 9, 13-14. He rejected the suggestion that his warrant was overly broad,

testifying "there was no intention to be that way" and that the warrant was quite specific about what he sought and why. *Id.* at 14-15.

Even with the all the records, Detective Brunner-Murphy testified that he had difficulty identifying Defendant as the accountholder because Defendant did not use "genuine information" when creating the account. *Id.* at 19, 22-23. Doc. 134 at 49, 53. He spent "a few" hours going through michellecuty013's emails looking for identifying information, though he did not read all the emails. Doc. 52 at 18-19, 23; Doc. 134 at 60. Having no luck, he decided to search emails with attachments because other emails suggested the accountholder was involved with a business, and he hope by searching attachments he "would find … some sort of business document" that would identify the accountholder. Doc. 52 at 18-20, 22-23; Doc. 134 at 56. Instead, he found child pornography, which abruptly ended his search. Doc. 52 at 18-20; Doc. 134 at 53-58. At that point, Detective Brunner-Murphy still had not "thoroughly identified" Defendant has the owner of the account, though he did have some "summary information" suggesting Defendant's location and identity. Doc. 52 at 19, 22; Doc. 134 at 53-56, 59.

The district court denied Defendant's motion to suppress, concluding the Google warrant was "valid on its face" and not overbroad. Doc. 52 at 36. The district court found that Detective Brunner-Murphy had probable cause to

believe the unknown accountholder had violated, or was likely to violate, Montana law. *Id.* at 33-35. Noting that the purpose of the warrant was to identify the unknown accountholder, the court reasoned the contents of the account, regardless of the age, could be potentially relevant in discerning the accountholder's identity. *Id.* at 28-31, 36-38. The district court also emphasized that Detective Brunner-Murphy was "just looking for information to identify the accountholder," and that it was not the case that he immediately identified Defendant but "kept rummaging around [the emails] and found seven-year-old child pornography." *Id.* at 31.

As an alternative basis for denying the motion, the district court concluded that *Leon*'s good-faith exception applied, finding "nothing that clearly would have told an officer that this warrant wasn't valid or [that] proceeding just as these officers … proceeded was improper in any respect." *Id.* at 39. The district court observed that the good-faith exception would be inapplicable if "on its face the warrant was invalid, or if false information was provided," but found "no circumstances like that here" because Detective Brunner-Murphy "did what he should have done." *Id.*

### *C. The Trial Evidence*

With his motion to suppress denied, Defendant proceeded to trial. Defendant did not dispute the presence of child pornography at trial. Rather, the

defense argued that someone else with access to the computers obtained the pornography and Defendant had no knowledge of it. *See* Doc. 135 at 287.

i. Child Pornography in the Michellecuty013 Account

In 2009, the michellecuty013 account received a total of forty-seven emails. Doc. 134 at 133. Eight of those emails contained child pornography attachments. *Id.* at 68-74,105-13. The first of the eight emails came from "Jenny Devamp." *Id.* at 106-09. A month before the first child pornography email, "Jenny Devamp" sent michellecuty013 an invitation to "connect" on Yahoo. *Id.* at 107-8. The name "Jenny Devamp" and the corresponding email were found in Defendant's cell phone contacts, Doc. 135 at 182-83, and Jenny Devamp was also a recipient of the other seven child pornography emails, *see* Gov. Exs. 16, 19-24. Some of the child pornography attachments had innocuous names, but one was titled "fwsweetsweetcpweallwanttofuckhard."Doc. 134 at 71-72; Gov. Ex. 20. According to a Google employee who testified at trial, Google only retains deleted emails for a short time, Doc. 134 at 40-41, so the presence of these emails in the michellecuty013 records indicated that they had not been deleted, though the records did not specify where the email messages had been stored in the email account, Doc. 134 at 78; Doc. 135 at 251, 266.

The government presented substantial evidence that the michellecuty013 account belonged to Defendant. Emails from the account indicated that the

owner went by the names "Michelle" and "Mikel," was involved in belly dancing, and had a business called Mikels Studio. *Id.* at 53-54. Two government witnesses who knew Defendant testified that he went by "Michelle" or "Mikel" and that the account was his. *Id.* at 143-45; Doc. 135 at 233-35. One of the witnesses, Kira Burdeshaw ("Burdeshaw") testified that Defendant was involved her belly dance group and they would communicate over email. Doc. 134 at 143-45. Burdeshaw knew Defendant was receiving michellecuty013's emails because she and Defendant would discuss emails they had sent and Defendant would come to class knowing the choreography Burdeshaw had emailed out for practice at home. *Id.* at 148-49. Burdeshaw's testimony was corroborated by numerous emails about belly dancing found in the michellecuty013 account, including an email from a fellow belly dancer with photographs of Defendant during a birthday celebration. *Id.* at 118-22, 144-48. The other witness, Rhonda Thompson ("Thompson"), knew Defendant and his family and would hire Defendant's business to do maintenance and repairs on her rental units. Doc. 135 at 233-35. Thompson also testified that Defendant helped her create a webpage. *Id.* at 234-35. Michellecuty013's emails to Thompson included a business invoice from Mikels Studios and discussion of webspage templates. Doc. 134 at 125-27; Doc. 135 at 234-36.

Additional evidence from the account established that michellecuty013 had received emails addressed to "Michael Alford" and "Michael," conducted internet searches for "Michael Alford," and used the account to create a PayPal account with Defendant's previous address. Doc. 134 at 104, 114-18. The recovery email for the account was the Mikels Studios email. *Id.* at 49, 127. The notebook seized in Defendant's bedroom contained the username and password for the account, and Defendant's cell phone was also linked to the account. *Id.* at 86-88, 129-32; Doc. 135 at 183, 185-88. In his interview with law enforcement, Defendant admitted that Mikels Studio was his business. Doc. 42(b). Defendant's former probation officer testified that Defendant went by "Mikel" and had a business called Mikels Studios. Doc. 135 at 242-43. Records from the Department of Motor Vehicles introduced at trial as well as testimony from the probation officer confirmed that Defendant did not live with his parents when the child pornography was received in 2009. *Id.* at 243-44; Doc. 134 at 115-16; Gov. Ex. 36.

ii. Child Pornography on Residential Desktop

Forensic analysis of the residential desktop computer revealed over a hundred thumbnail images of child pornography saved in the computer's thumbcache. Doc. 135 at 210-11, 223-24. As the government's expert explained, the thumbcache "is where the Windows operating system creates a thumbnail

of an image that was viewed on [the] computer" through Windows Explorer or the Internet Explorer web browser. *Id. See also id.* at 253-55. This means that the images had been viewed on the computer; otherwise they would not appear in the thumbcache. *Id.* at 211. The government's expert also discovered over thirty child pornography files saved in subfolders of a folder labeled "Asoftech." *Id.* at 212. Asoftech is "a small utility application or program that is designed to go and recover deleted files so that a user could use that software to recover files that had previously been deleted from some device." *Id.* at 212, 217. The government's expert testified that the "Data" subfolder where the child pornography files were stored is not created "until a computer user executes the program and recovers data." *Id.* at 214-15. The desktop computer also contained a program called "CCleaner" that can be used to permanently delete files. *Id.* at 222-23.

The government's trial evidence rebutted Defendant's suggestion that Defendant's father, Melvin, was the source of the pornography on the desktop. For example, Thompson, who visited the Alford residence "once or twice a week," testified that Melvin, an 83-year-old man, was not "computer savvy" and did not know how to use the computer without Defendant's help. *Id.* at 229-31, 239-40. She also testified that a pair of glasses found next to the computer during the search belonged to Defendant and that Defendant had used the desktop

computer to create a webpage for her. *Id.* at 230-31, 235. Burdeshaw testified that Defendant was "pretty savvy" with computers, that the internet was their main mode of communication, and the computer was "kind of a life source" for Defendant. Doc. 134 at 151-52. Pictures found on Defendant's phone indicated that he had taken apart the desktop computer, while notes found near the computer indicated that someone was trying to do a "more in-depth access into" the computer's operating system. Doc. 135 at 175-76, 188, 204-05. The government's expert testified that a basic computer user would do neither of those things nor use Asotech software. *Id.* at 175-76, 204-05, 215. Forensic evidence also indicated that the computer had been used to login into the michellecuty013 account as recently as the morning of the search. *Id.* at 207.

iii. Evidence of Defendant's Knowledge

Much of the defense questioning on cross-examination aimed to establish that the child pornography could have mistakenly ended up in michellecuty013's email and on the desktop computer. But the government's evidence established the opposite. For example, search histories for the michellecuty013 account and both computers revealed internet searches for child pornography using "standard search terms" such as "preteen underage" and "lolita," as well as searches for young children, child erotica, and pornography of "teen" and "petite" girls. *Id.* at 195-200, 209-10; Doc. 134 at 103, 133. On top of that,

approximately 50,000 images of child erotica were saved on the desktop computer and the laptop computer, and forensic analysis of the computers confirmed that websites featuring child erotica had been visited. Doc. 135 at 200-03, 209. The government also introduced evidence of Defendant's 2003 conviction for "shipping sexually explicit visual depictions of a minor … by computer," *id.* at 241-42, as well as a recording and transcript of Defendant's interview with Detective Matthews where Defendant denied ownership of the michellecuty013 account and ever using the desktop computer, Gov. Ex. 42(a) & (b).

Defendant had moved *in limine* to exclude the evidence of child erotica on the ground that it was irrelevant and prejudicial. Doc. 51; Doc. 132 at 5. The district court denied the motion, concluding that the child erotica evidence was inextricably intertwined with the other evidence in the case. Doc. 55; Doc. 132 at 8. The district court also concluded that the evidence would be admissible pursuant to Rule 404(b) because it was probative of "intent [and] absence of mistake." Doc. 132 at 8-9. The court reasoned that it was "not very likely that 55,000 of those kind of images [got] onto a machine by accident" and that "somebody who is interested in that kind of material is more likely to be interested in child pornography." *Id.* at 8-9.

*D. Sentencing*

The jury convicted Defendant of both counts. At sentencing, the government moved to dismiss Count Two due to double jeopardy concerns. Doc. 136 at 26. After weighing the § 3553(a) factors, the district court sentenced Defendant to the mandatory minimum of 180 months' imprisonment, followed by a lifetime of supervised release. *Id.* at 33-38; Doc. 95.

## III. Standards of Review

Issue I: This Court reviews the denial of a motion to suppress as a mixed question of law and fact, with conclusions of law reviewed *de novo* and findings of fact reviewed for clear error. *United States v. Johnson*, 777 F.3d 1270, 1273-74 (11th Cir. 2015). "All facts are construed in the light most favorable to the party prevailing below." *Id.*

Issue II: The district court's evidentiary rulings are reviewed for an abuse of discretion. *United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992).

Issue III: This Court reviews the sufficiency of the government's evidence *de novo*, construing all evidence in the light most favorable to the jury's verdict, and drawing all inferences in its favor. *United States v. Pruitt*, 638 F.3d 763, 765 (11th Cir. 2011).

## Summary of the Arguments

Issue I

The district court properly denied Defendant's motion to suppress the child pornography evidence. Detective Brunner-Murphy's warrant for Defendant's Google account records was supported by probable cause and particularized both the place to be searched and the items to be seized. That the warrant required broad disclosure of information in Defendant's Google account was reasonable under the circumstances, as the purpose of the warrant was to identify the unknown caller and the object of the warrant was evidence of the accountholder's identity. Furthermore, even if the warrant were overbroad, the child pornography evidence was still not subject to exclusion because it was obtained in reasonable reliance on a warrant that was not facially deficient, making the good-faith exception to the exclusionary rule applicable.

Issue II

The district court did not abuse its discretion in admitting the child erotica evidence. The evidence was intrinsic to the charged child pornography offenses because it was located on computers that contained or had searched for child pornography. Even if not intrinsic, the evidence was properly admitted under Rule 404(b) as evidence of Defendant's knowledge and absence of mistake or accident. Indeed, because Defendant strongly disputed his knowledge of the

child pornography during his trial, the probative value of the evidence was significant, while other evidence in the record minimized any unfair prejudice associated with it. Thus, the child erotica evidence was not subject to exclusion under Rule 403, and the district court properly admitted it.

## Issue III

The government offered sufficient evidence for a reasonable jury to conclude that Defendant knowingly received or attempted to receive child pornography. The government's evidence established that Defendant had a strong prurient interest in children, as evidenced by his previous conviction, the Google searches for young children and child exploitation materials, and the possession of thousands of images of child erotica. This evidence alone strongly supports the conclusion that the child pornography in Defendant's email and on the desktop was not there by accident. The government also established that Defendant was an active user of his email account, while other evidence suggested that Defendant had previous contact with at least one sender of the child pornography in his email account. As to the child pornography on the desktop, the government's expert testified that the presence of the pornography in the thumbcache meant that someone had viewed the original images on the computer. Witnesses who knew Defendant testified that he had used the desktop computer, that he was computer savvy, and that the computer was important to

him. The government also established that someone had used special software on the desktop to recover images of child pornography and that Defendant's parents, the only other people with access to the computer, could not operate the computer without Defendant's help. In totality, the government's evidence fully supported the jury's conclusion that Defendant knowingly received child pornography, and his conviction should be affirmed.

## ARGUMENT

I. <u>The District Court Did Not Err in Denying Defendant's Motion to Suppress Because the Google Search Warrant Was Not Overbroad</u>

Defendant contends that the district court should have suppressed the evidence against him because the Google warrant, the catalyst for the child pornography investigation, was so broad that it violated the Fourth Amendment's particularity requirement. The district court did not err in denying Defendant's motion to suppress because the warrant was not overly broad.

"The Fourth Amendment requires that 'those searches deemed necessary should be as limited as possible,'" *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)), so all warrants must state with particularity the places and persons to be searched or the things to be seized, *United States v. Travers*, 233 F.3d 1327, 1329 (11th Cir. 2000). A warrant "is considered sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011). A warrant that does not sufficiently particularize the place to be searched and the things to be seized is unconstitutionally overbroad, and the evidence seized must be excluded. *Travers*, 233 F.3d at 1329. Even so, the Fourth Amendment does not require "elaborate specificity," and the particularly requirement is applied with a "practical margin of flexibility" depending on type of property to be seized and

the nature of the activity under investigation. *Bradley*, 644 F.3d at 1259 (citing *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982)). In assessing the sufficiency of the warrant, this Court considers whether the description is "as specific as the circumstances and the nature of the activity under investigation permit." *Wuagneux*, 683 F.2d at 1349.

The Google warrant at issue here directed Google to turn over

> [a]ny and all records, files, data, and/or other forms of information, including names, user names, dates of birth, IP addresses, home addresses, phone numbers, email addresses, photos, videos, e-mail content, search history, call history, or other information held by Google Inc. which may aid in obtaining the identification and/or location of the individual who[] contacted K-[M]art in Hamilton, MT via phone call to 406-363-2922, 406-363-2923, 406-363-4367 and/or 406-363-2924 on September 16th, 2014 at approximately 2145 hours MST.

Doc. 28-2. Defendant alleges that this warrant "had no limitations." Appellant's Br. at 21. But that is plainly not so. The warrant did not direct Google to turn over all information for all accounts that had ever called a K-Mart store. This warrant was quite specific, requesting account information only for Google users who had called into any of four particular K-Mart numbers on one particular day at one particular time. The particularity of the warrant expertly narrowed down the request to a single user account. The warrant also listed the crimes charged, described the place to be searched, and designated the specific information to be seized in connection with the offenses, as required by the

Fourth Amendment. Each category of information sought was relevant to discerning the unknown caller's identity, and thus the warrant did not allow an unfettered "general search" of Google's records.

Defendant does not dispute that the warrant was supported by probable cause or that the information requested would be reasonably likely to yield evidence of Defendant's identity. Rather, Defendant's complains that the warrant, in effect, required Google to turn over the entire contents of his Google account. That may be true, but the fact that a warrant is broad does not mean the warrant violated the Fourth Amendment. "[T]he magnitude of a search is insufficient, by itself, to establish a constitutional violation; rather, the relevant inquiry is whether the search and seizures were reasonable under all the circumstances." *Wuagneux*, 683 at 1352. The breadth of this warrant was necessitated by the circumstances of the investigation.

To be sure, this Court has expressed concern about warrants requiring "disclosure to the government virtually every kind of data that could be found in a social media account." *See Blake*, 868 F.3d at 973-74. But unlike the warrant at issue in *Blake*, the Google warrant was not "unnecessarily" broad because Detective Brunner-Murphy had no additional information that would have allowed him to further narrow the information sought. *See id.* (noting that the warrant at issue was "unnecessarily" broad because law enforcement knew

information about the crimes that would have allowed them to narrow the scope warrant). The Google warrant was "as specific as the circumstances" permitted. *See Wuagneuz*, 683 F.2d at 1349; *United States v. Stantarelli*, 778 F.2d 609, 614-15 (11th Cir. 1985). Detective Brunner-Murphy could not specify what information in the account would actually identify the account holder when he drafted the warrant. And, as the district court observed, the simple fact is that all of the information sought in the warrant, regardless of age, had the potential to aid in the identification of the accountholder (and thus the caller). Doc. 52 at 36-38. The seizure and search of those materials was reasonable "under all the circumstances." *See Wuagneux*, 683 at 1352; *Stantarelli*, 778 F.2d at 616 (holding removal of "large numbers of documents," including documents unrelated to the crime of interest, from Defendant's residence for subsequent review was reasonable).

Defendant makes no suggestions about how the warrant could be narrowed, but he does criticize Detective Brunner-Murphy's execution of the search, alleging that identity of the caller "was on page one, from the IP address." Appellant's Br. at 22. But the IP address alone does not establish the identity and location of the accountholder. That information requires a subpoena or an additional warrant to the internet service provider, and the extra time it takes to obtain that information from the service provider is not preferable

in a case potentially involving assault on a child. Moreover, IP addresses are not always helpful. For instance, the IP address could have corresponded to a public internet source, which would tell law enforcement little about the caller other than where he was on September 16, 2014. And even if the IP address were linked to a particular residence, it still does not necessarily identify the owner of the Google account, particularly if multiple people live at the residence. Here, the IP address was used to track down Defendant's residence, but it was the other information in the account that confirmed Defendant was the accountholder. *See* Doc. 52 at 17.

Given this, it was not unreasonable for Detective Brunner-Murphy to request and review other account information reasonably likely to identify Defendant, and his review of the account information was entirely consistent with this Court's Fourth Amendment jurisprudence allowing law enforcement to search any places that may reasonably conceal the object of the search. *See Wuagneux*, 683 F.2d at 1352 ("While the permissible scope of a search is governed by the terms of the warrant … by the same token a search may be as extensive as reasonably required to locate the items described in the warrant."). *See also United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014); *United States v. Jackson*, 120 F.3d 1226, 1228-29 (11th Cir. 1997) ("a search … is generally not limited by the possibility that separate acts of entry or opening may be required

to complete the search."); *Santarelli*, 778 F.2d 609, 616 ("Given the fact that the search warrant entitled the agents to search for documents …. it is clear that the agents were entitled to examine each document in the bedroom or in the filing cabinet to determine whether it constituted evidence they were entitled to seize under the warrant."). Moreover, this Court is not in the habit of "second-guessing" an officer's reasonable investigatory techniques, even where less intrusive options were available. *See United States v. Sokolow*, 490 U.S. 1, 11 (1989); *Dalia v. United States*, 441 U.S. 238, 257 (1979) (noting that "the details of how best to proceed with the performance of a search authorized by warrant" are "generally left to the discretion of the executing officers"). *See also Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663 (1995) ("We have repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment.").

Defendant also criticizes Detective Brunner-Murphy for searching through his emails. But the warrant permitted Detective Brunner-Murphy to search the account information for evidence of Defendant's identity and the emails were expressly included within its scope. Moreover, there can be no dispute that neither the IP address nor the subscriber identification plainly identified Defendant as the accountholder. Thus, Detective Brunner-Murphy's

decision to search through the emails for evidence of the accountholder's identity was entirely reasonable and within the scope of the warrant.

That Detective Brunner-Murphy was also interested in identifying a potential victim undermines neither the warrant nor the search. His concerns about a victim were completely justified, as the K-Mart call indicated the Google accountholder was going to sexually assault his six-year daughter, and evidence of the victim would be evidence of the crime for which Detective Brunner-Murphy had probable cause to justify the search. Moreover, identifying a potential victim was relevant to the identification of the unknown caller because the caller identified the victim as his "daughter."

Regardless, Detective Brunner-Murphy's subjective intentions are irrelevant, and he was entitled to look for evidence of a victim as long as he remained within the scope of the search warrant. *See United States v. Spivey*, 861 F.3d 1207, 1215 (11th Cir. 2017) ("Pretext does not invalidate a search that is objectively reasonable…[a]s long as the officers are engaging in 'objectively justifiable behavior under the Fourth Amendment'… their subjective intentions will not undermine their authority to stop or search[.]"); *Evans v. Stephens*, 407 F.3d 1272, 1280 n.9 (11th Cir. 2005) (noting that an officer's "subjective intentions and beliefs … are immaterial to the Fourth Amendment analysis" and that "[u]lterior motives will not make an otherwise lawful search unlawful.").

There is also no evidence that Detective Brunner-Murphy searched any of the records or emails for the sole purpose of identifying a victim. Indeed, the district court made a finding of fact, not clearly erroneous, that Detective Brunner-Murphy was "just looking for information to identify the accountholder" and that he did not immediately identify Defendant and continue to "rummag[e] around" the account. However, even if Detective Brunner-Murphy exceeded the warrant's scope, "seizure of items outside the scope of a warrant will not affect admissibility of items properly seized." *Wuagneux*, 683 F.2d at 1354. Detective Brunner-Murphy was clear that he searched the email and video containing child pornography for the proper purpose of identifying the Defendant. Thus, the evidence of child pornography and all its fruits were properly admitted. *See id.*

Assuming *arguendo* that the warrant was excessively broad, the district court still did not err in denying Defendant's motion to suppress because the Google warrant is covered by the "good-faith exception" to the exclusionary rule. *Blake*, 868 F.3d at 974-75. The good-faith exception enunciated by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984) recognized that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant should generally not be excluded." *Blake*, 868 F.3d at 974-75. Still, *Leon's* good-faith exception does not apply in cases where the

"the warrant was so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers could not have reasonably presumed it to be valid."[3] *Id.* (quoting *Leon*, 468 U.S. at 923). *See also Travers*, 233 F.3d at 1330.

The Google warrant was not so facially deficient that Detective Brunner-Murphy "could not have reasonably presumed it to be valid," so the good-faith exception applies. In *Blake*, this Court considered whether the good-faith exception was applicable to a similar warrant that required Facebook to disclose "virtually every type of data that could be located in a Facebook account," including all private messages sent and received, IP addresses, photographs, website searches, every purchase made on Facebook's marketplace, and the defendant's entire contact list. 868 F.3d at 966-67, 974-75. Finding the *Leon* good-faith exception applicable, this Court noted whether the Facebook warrant violated the particularity requirement was "not an open and shut matter" and found it a "close enough question" that the warrant was not "so facially deficient" that law enforcement could not reasonably believe it to be valid. *Id.* at 974-75. The Facebook warrant at issue in *Blake* was even broader than the Google warrant at issue here. *See id.* Moreover, not only was the Google warrant

[3] Defendant does not argue that any other exceptions to the *Leon* good-faith rule are applicable. Appellant's Br. at 23.

signed by a neutral judge, but Detective Brunner-Murphy also had it approved by the city attorney, and even the experienced district court below found it to be "facially valid." Thus, there is no question that Detective Brunner-Murphy could have reasonably presumed it to be valid.

Defendant argues that the good-faith exception does not apply because, by viewing a video attachment, Detective Brunner-Murphy "clearly exceeded the scope of looking for evidence of the identity and location," of the unknown K-Mart caller. Appellant's Br. at 23. However, the search of the video was expressly within the warrant's scope, since the warrant gave Detective Brunner-Murphy the authority to search and seize "any and all … email content" that may aid in identifying Defendant. Moreover, Detective Brunner-Murphy had no way of discerning whether the emails or attachments fell within the scope of the warrant without first reviewing them. When a warrant authorizes the seizure of documents, "an officer acting pursuant to such a warrant is entitled to examine any document he discovers," in order to "perceive the relevance of the documents of the crime," provided "the perusal … cease[s]" when the irrelevance of the document is clear. *United States v. Slocum*, 708 F.2d 587, 604 (11th Cir. 1983). *See also Andresen v. Maryland*, 427 U.S. 463, 482 n.11 (1976) ("In searches for papers, it is certain that some innocuous documents will be

examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized.”).

Detective Brunner-Murphy also testified that he searched the email attachment for the express purpose of determining the accountholder’s identity and did so only after his review of the subscriber information and other emails failed to identify the accountholder. Doc. 52 at 23. The district court credited Detective Brunner-Murphy’s testimony and concluded that he was not improperly “rummaging” around Defendant’s emails. *Id.* at 31, 39 (“There’s nothing that clearly would have told an officer that … proceeding just as [Detective Brunner-Murphy] proceeded was improper in any respect.”). In the words of the district court, Detective Brunner-Murphy “did what he should have done.” *Id.* at 39. Defendant has offered no reason why this Court should disregard the district court’s findings.

Because the warrant was clearly valid, and the *Leon* good-faith exception applies even if it were not, the district court did not err in denying Defendant’s motion to suppress.

## II. The District Court Did Not Abuse Its Discretion by Admitting Evidence of Child Erotica

When officers searched the two computers found in Defendant’s residence, they found approximately 50,000 saved images of child erotica. Doc. 135 at 200-03, 209. They also found evidence that both computers had searched

for and viewed child erotica online. *Id.* The district court did not abuse its discretion in admitting this evidence.

Under the Federal Rules of Evidence, any relevant evidence is admissible unless another rule demands its exclusion. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. One rule of exclusion, Rule 404(b), provides that relevant evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character to establish that the defendant "acted in accordance with [that] character." Fed. R. Evid. 404(b). However, the evidence is admissible for other purposes, including proving intent, knowledge, and absence of mistake or accident. *Id.* For extrinsic evidence of other crimes or acts to be admissible under Rule 404(b), "(1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice[.]" *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007).

Rule 404(b) does not apply when the evidence is intrinsic to the charged offense. Evidence is intrinsic when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2)

necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Id.* (quoting *United States v. Baker*, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005)). Evidence that illustrates the context, motive, and set-up of the crime is admissible as long as it is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *Id.* (quoting *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998)). Evidence is inextricably intertwined when it "forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* (quoting *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989)). Intrinsic evidence is admissible even if it "tends to reflect negatively on the defendant's character." *Foster*, 889 F.2d at 1053.

All evidence, whether intrinsic or extrinsic, must satisfy the requirements of Rule 403. *Edouard*, 485 F.3d 1344. Rule 403 gives the district court the discretion to exclude otherwise relevant evidence if its probative value is "substantially outweighed" by the danger or unfair prejudice. Fed. R. Evid. 403. The exclusion of relevant evidence under Rule 403 is an extraordinary remedy that should be used sparingly, with the balance struck in favor of admissibility. *Edouard*, 485 F.3d at 1344 n.8.

The district court did not abuse its discretion in admitting the evidence of child erotica. The evidence was relevant because it suggested a sexual interest in children, which made it more probable Defendant knowingly received child pornography. The child erotica was also intrinsic evidence not subject to exclusion under Rule 404(b) because it was "linked in time and circumstances with the charged crime" and "form[ed] an integral and natural part" of the government witnesses' testimony about what was found on the computers in addition to the child pornography. *Edouard*, 485 F.3d 1344. The government's evidence left no question that the desktop computer housed both child pornography and child erotica, while both the desktop and laptop computers had been used to search for child pornography and child erotica. Doc. 135 at 195-03, 209-12.

Nonetheless, even if the child erotica evidence was not intrinsic to the child pornography offense, the evidence was still admissible under Rule 404(b). By pleading not guilty, Defendant made his knowledge a material issue during the trial. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005). The presence of sexualized images of young girls indicates a prurient interest in children and shows that the receipt of the child pornography was knowing and

not the result of a mistake or accident.[4] *See United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) (holding that extrinsic evidence of defendant's previous sexual acts with minors was admissible under 404(b) as evidence of knowledge or absence of mistake or accident in prosecution for production, receipt, and possession of child pornography).

Rule 403 does not require the exclusion of the evidence. Throughout trial, Defendant vigorously disputed that he knowingly received child pornography, so the probative value of the child erotica was significant. The possession of child pornography and the possession of child erotica involve the same mental state because both possessions involve a sexual interest in children, while the size of the child erotica collection suggests a strong prurient interest in children. *See United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) ("A similarity between the other bad act and the charged offense will make the other [act] highly probative with regard to the defendant's intent in the charged offense."). The child erotica also directly contradicted Defendant's suggestion that the internet searches for child exploitation materials were accidental, since material viewed from the search for child erotica was downloaded and saved on the computer. Doc. 135 at 200-03. Thus, the child erotica weakened Defendant's

[4] Defendant does not dispute that the government offered sufficient proof of possession of child erotica "to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question." *Edouard*, 485 F.3d at 1344.

contention that both the receipt of child pornography and the internet searches for child exploitation materials were the result of mistake or accident.

Defendant also suffered no unfair prejudice. "Demonstrating that a piece of evidence is prejudicial is not enough to warrant exclusion under Rule 403 by itself since virtually all evidence presented against a criminal defendant can be considered prejudicial." *Kapordelis*, 569 F.3d at 1313. Though there were approximately 50,000 images of child erotica saved on the computers, the government only introduced six images of the child erotica into evidence as well as two screen shots of the websites. The images, though inappropriate, were not so offensive and obscene as to "incite the jury to an irrational decision." *See United States v. Hands*, 184 F.3d 1322, 1328 (11th Cir. 1999). That is particularly true in the context of this case because the jury was exposed to graphic images of child pornography. Additionally, the evidence linking Defendant to the child erotica was substantially the same as the evidence linking him to the child pornography, so there was little risk that the jury would conclude Defendant possessed the child erotica but not the child pornography. Instead, the evidence of child erotica was useful in assessing whether the child pornography was knowingly possessed, which was the evidence's proper purpose. Finally, any prejudice to Defendant was minimal. Government and defense witnesses testified that the child erotica was not child pornography. Doc. 135 at 199, 221,

258. The government also introduced evidence pursuant to Rule 404(b) of Defendant's previous conviction for sending child pornography over the internet, *id.* at 242, so the jury learned that Defendant had a history with child exploitation materials regardless of the child erotica.

For these reasons, the district court did not abuse its discretion in admitting the child erotica evidence.

## III. The District Court Properly Denied Defendant's Motion for Acquittal Because the Government's Evidence Proved Defendant Knowingly Possessed Child Pornography

Finally, Defendant disputes that the government proved he knowingly received child pornography. In assessing the sufficiency of the evidence, this Court considers "whether a reasonable jury could have found that the evidence established defendant's guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the government, drawing all reasonable inferences and making all credibility choices in the government's favor." *Pruitt*, 638 F.3d at 765. "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013). Because the evidence, construed in the light most favorable to the government, supports the jury's conclusion that the receipt was knowing, the district court properly denied Defendant's motion for acquittal.

Pursuant to § 2252A(a)(2)(A), it is a crime for any person to knowingly receive or distribute, or attempt to receive or distribute, "any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer[.]"18 U.S.C. §§ 2252A(a)(2) & (b)(1). "A person 'knowingly receives' child pornography … when he intentionally views, acquires, or accepts child pornography on a computer from an outside source." *Pruitt*, 638 F.3d at 766. Though "[i]nadvertent receipt of child pornography is not a violation of the statute," a defendant who intentionally views child pornography images "sent to his computer may be convicted whether or not, for example, he acts to save the images to the hard drive, to edit them, or otherwise to exert more control over them." *Id.* Importantly, "[e]vidence that a person has sought out—searched for—child pornography on the internet and has a computer containing child-pornography images—whether in the hard drive, cache, or unallocated spaces—can count as circumstantial evidence that a person has 'knowingly received' child pornography." *Id.* (internal alternations omitted).

Here, the government's evidence proved Defendant knowingly received child pornography. As an initial matter, the government's evidence established that Defendant had a strong sexual interest in children, which supports the jury's

conclusion that he knowingly received child pornography. For example, both computers in the residence were used by Defendant and had significant amounts of child erotica saved on them. Doc. 135 at 200-03, 209. In addition, both computers as well as Defendant's michellecuty013 google account had been used to search for child erotica and child pornography, Doc. 134 at 103, 133, Doc. 135 at 195-200, 209-10, while the government also introduced evidence that Defendant had been previously convicted for sending child pornography over the internet, Doc. 135 at 241-42. The evidence also revealed Defendant's consciousness of guilt. In his interview with Deputy Williams during the residential search, Defendant flatly denied any association with the michellecuty013 account or the desktop computer. Gov. Ex. 42(a) & (b). As it turned out, both the account and the desktop housed child pornography, and the government's evidence revealed Defendant's denials to be demonstrably false.

There were two particular groups of child pornography at issue during trial. The first was the group of images and videos found attached to eight emails in Defendant's michellecuty013 email account. Doc. 134 at 68-74, 105-13.While the trial evidence did not establish where in Defendant's account the emails with images and videos were, Doc. 135 at 78, 251, 266, the evidence did establish that the eight emails containing child pornography attachments had not been deleted from the account, Doc. 134 at at 40-41. The evidence also established

that the sender of the first email containing child pornography, Jenny Devamp, had invited Defendant to "connect" on Yahoo a month before sending the first email. *Id.* at 107-08. Jenny Devamp and the email address used to send child pornography were found in Defendant's phone contacts, Doc. 135 at 182-93, and Jenny Devamp's email was included as a recipient on all the other child pornography emails found, Gov. Exs. 16, 19-24. The government's evidence further established that Defendant was an active user of the michellecuty013 email account who read his emails and had received emails in between the emails containing child pornography. Doc. 134 at 108-13, 131, 143-45. The government did not have to prove that Defendant ever opened or viewed the files, as knowingly accepting child pornography from an outside source is sufficient. *See Pruitt*, 638 F.3d at 766. And while some of the files may have had innocuous names, one of the files was titled "fwsweetsweetcpweallwanttofuckhard," Doc. 134 at 71-72, Gov. Ex. 20, which was a clear reference to child pornography, *see* Doc. 135 at 209. This evidence, together with the evidence of Defendant's strong prurient interest in children, was sufficient for a reasonable jury to conclude that Defendant knowingly received the child pornography in his email. *See Pruitt*, 638 F.3d at 766.

The second group of child pornography was the images found on the desktop computer in Defendant's residence. Over a hundred of the images were

thumbnails saved in the computer's thumbcache. Doc. 135 at 210-11, 223-24. The government's expert testified that the presence of the images in thumbcache meant that the images had been viewed on the computer, otherwise "[t]hey would not exist as a thumbnail." *Id.* at 210-211, 223-24. The defense expert, on the other hand, testified that it was "not at all uncommon" for thumbnails to exist even if the original content was not "actually viewed." *Id.* at 255. Given the number of images and evidence of Defendant's prurient interest in children, his searches for child exploitation materials, and the child pornography in his email, the jury was entitled to conclude that this was not a case where the images accidentally ended up in the thumbcache without being viewed. Instead, the evidence supports and a reasonable jury could conclude that Defendant intentionally viewed (and thereby received) the child pornography online, as reflected by the desktop's thumbcache. *See Pruitt*, 638 F.3d at 766.

The government's evidence also established that Defendant had used a special software to recover child pornography images that were previously deleted from the computer. *See* Doc. 135 at 212-17, 264. And while this evidence does not constitute receipt of child pornography (because the pornography did not come from "an outside source," *see Pruitt*, 638 F.3d at 766), it further supports the jury's conclusion that the child pornography present in Defendant's email and on the desktop was not there by accident.

Defendant relies on the Tenth Circuit's decision in *United States v. Dobbs*, 629 F.3d 1199 (10th Cir. 2011) to argue that he did not knowingly receive the thumbcaches files. Like the case here, *Dobbs* involved files that were automatically downloaded into a computer's cache. But the evidence in *Dobbs* established that those child pornography files could have ended up in the cache "regardless of whether they were [displayed] on the computer's monitor." *Id.* at 1201-02 ("In other words, a user does not necessarily have to see an image for it to be captured by the computer's automatic-caching function."). In contrast, the government expert here testified that the presence of the child pornography images in the thumbcache meant that those images had been viewed on the computer. Doc. 135 at 210-211, 223-24. To the extent Defendant's expert suggested that the content still may not have been "actually viewed," the jury was entitled to weigh the evidence and credit the government's expert over Defendant's. *See United States v. Spoerke*, 568 F.3d 1236, 1247 (11th Cir. 2009) ("The jury was free to credit the testimony of the government's expert and discredit the testimony of [the defense] expert."). Thus, the jury could reasonably conclude Defendant had intentionally viewed child pornography on the internet, resulting in the thumbcache images. This is sufficient for a conviction under the statute. *Pruitt*, 638 F.3d at 766-67 (affirming conviction for receipt of child pornography found in a computer's cache and unallocated space

where the evidence established the defendant had searched for child pornography and visited websites connected to child pornography).[5]

Regardless, Defendant was also charged with attempted receipt of child pornography, so the government did not have to prove that Defendant actually received child pornography. Doc. 1. Instead, to prove attempt, the government need only establish "(1) that the defendant intended to commit the underlying criminal offense with the requisite *mens rea* and (2) that the defendant engaged in conduct which constituted a substantial step towards the commission of the crime and which strongly corroborates the defendant's criminal intent." *United States v. Rothenberg*, 610 F.3d 621, 626 (11th Cir. 2010). The repeated internet searches for child pornography using "standard search" terms (including a search specifically for "child pornography"), Doc. 134 at 103, Doc. 135 at 198, 209-10, considered together with the totality of the other evidence, establishes that Defendant intended to receive child pornography and made substantial steps towards actually receiving it. Indeed, Defendant's own expert acknowledged that the searches evidenced an intent to receive child pornography, Doc. 135 at 264-65, while two government witnesses testified that

[5] To the extent Defendant suggests *Pruitt* is distinguishable because, in his case, "there [was] no admission that he knowingly accessed and viewed CP images," the government did establish that Defendant had been previously convicted of sending child pornography, which supports the same inference.

one would "expect" searches using those "standard" terms to return child pornography, Doc. 134 at 102-3, Doc. 135 at 209-10. The evidence of attempted receipt of child pornography also supports the jury's verdict.

Finally, that Defendant's elderly parents also had access to the computers does not undermine the jury's conclusion. "The question of identity was clearly presented to the jury[,] which resolved it against [Defendant]." *Holifield v. Davis*, 662 F.2d 710, 710 (11th Cir. 1981). The government's evidence strongly supports the jury's conclusion that it was Defendant who received the child pornography. There is no evidence that anyone other than Defendant had access to his michellecuty013 Google account, and the evidence establishes that Defendant received child pornography in that account before he lived with his parents. Doc. 134 at 115-16; Doc. 135 at 243-44. A witness who knew Defendant and his family testified that Defendant's elderly parents did not know how to use a computer without Defendant's help, Doc. 135 at 229-31, 239-40, while another witness testified that Defendant was computer savvy and the computer was "kind of a life source" for him. Doc. 134 at 151-52. The evidence also established that Defendant was previously convicted of a child pornography offense and had lied to investigators about his use of the michellecuty013 account and the desktop computer. Doc. 135 at 241-42; Gov. Ex. 42(a) & (b).

Accordingly, the evidence fully supports the jury's conclusion that Defendant was the source of the pornography in his email and on the desktop.

It's no coincidence that Defendant, a convicted felon for a previous child pornography offense, had child pornography in his email. Nor is it coincidental that both the laptop and desktop computers used by Defendant had thousands child-erotica images on them along with evidence that Defendant had searched for and viewed child pornography. The only reasonable interpretation of the evidence is that Defendant intentionally sought out and viewed child pornography. For this reason, Defendant's conviction for receipt of child pornography should be affirmed.

## CONCLUSION

For the reasons stated above, the United States, Appellee, respectfully requests that this Court affirm the judgment and sentence of the district court.

Respectfully submitted,

CHRISTOPHER P. CANOVA
United States Attorney

Jordane E. Learn
______________________
JORDANE E. LEARN
Assistant United States Attorney
Appellate Division
Northern District of Florida
Florida Bar No. 117808
111 North Adams Street, 4th Floor
Tallahassee, FL 32301
(850) 942-8430
jordane.e.learn@usdoj.gov

## Certificate of Compliance

I certify that this brief complies with the type-volume limitation set forth in F.R.A.P. 32(a)(7). This brief contains 10,198 words.

*s/ Jordane E. Learn*
JORDANE E. LEARN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that one copy of the foregoing has been mailed to Barbara Sanders, counsel for Defendant-Appellant Michael Ray Alford, at P.O. Box 157, Apalachicola, Florida, 32329, this 1st Day of March, 2018. On that same date this brief was electronically filed with the Court.

*s/ Jordane E. Learn*
JORDANE E. LEARN
Assistant United States Attorney